NbsWrayS

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                        22 Cr. 228 (AT)

 5   FRANKLIN RAY,

 6              Defendant.
                                         Sentence
 7   ------------------------------x

 8                                       New York, N.Y.
                                         November 28, 2023
 9                                       11:00 a.m.

10   Before:

11
                        HON. ANALISA TORRES,
12
                                         District Judge
13
                            APPEARANCES
14
     DAMIAN WILLIAMS
15        United States Attorney for the
          Southern District of New York
16   BY:  MATTHEW A. WEINBERG
          Assistant United States Attorney
17
     ANTHONY STRAZZA
18        Attorney for Defendant

19
     Also Present:  Kari Esposto
20

21

22

23

24

25
```

NbsWrayS

1          THE COURT:  Good morning.  We're here in the matter of

2    United States v. Franklin Ray.

3          Would you make your appearances, please.

4          MR. WEINBERG:  Yes, Matthew Weinberg, your Honor,

5    appearing for the government, and with me at counsel table is

6    Robert Stout, of the FBI.

7          MR. STRAZZA:  Good morning, your Honor.  Anthony

8    Strazza, appearing for Mr. Ray, who is seat standing to my

9    right.

10         THE COURT:  Please be seated.

11         This matter is on for sentencing.

12         In connection with today's proceeding, I've reviewed

13    the presentence investigation report filed on June 5, 2023,

14    revised on June 22, which includes the recommendation and

15    addendum;

16         The defendant's sentencing submissions dated November

17    7th and 13th of this year, including counsel's letter, the

18    mitigation report, a letter from Mr. Ray's physician, five

19    letters from Mr. Ray's family, and the forensic psychological

20    evaluation; and

21         The government's sentencing submissions, dated

22    November 14th, 15th, and 20th of this year, including exhibits

23    and over 150 pages of victim impact statements and supporting

24    documents.

25         Have the parties received each of these submissions?

NbsWrayS

1            MR. WEINBERG:  Yes, your Honor.  The government has.

2            MR. STRAZZA:  Yes, your Honor.

3            THE COURT:  Are there any further submissions?

4            MR. WEINBERG:  Not from the government, your Honor.

5            MR. STRAZZA:  Not from the defendant.

6            THE COURT:  Mr. Strazza, have you read the presentence

7    report?

8            MR. STRAZZA:  Yes, your Honor.

9            THE COURT:  Have you discussed it with your client?

10            MR. STRAZZA:  Yes.

11            THE COURT:  Mr. Ray, did you receive and read the

12    presentence report?

13            THE DEFENDANT:  Yes, your Honor.

14            THE COURT:  And you discussed it with Mr. Strazza?

15            THE DEFENDANT:  Yes, your Honor.

16            THE COURT:  Have you had the opportunity to go over

17    with him any possible errors in the report or anything else

18    that should be taken up with me?

19            (Defendant conferred with counsel)

20            THE DEFENDANT:  Yes, your Honor.

21            THE COURT:  Mr. Strazza, any objections to the

22    presentence report regarding factual accuracy?

23            MR. STRAZZA:  No, your Honor.

24            THE COURT:  AUSA Weinberg.

25            MR. WEINBERG:  No, your Honor.

NbsWrayS

1        THE COURT:  Hearing no objections, the Court adopts

2   the factual recitations set forth in the report.  It will be

3   made part of the record in this matter and placed under seal.

4   If an appeal is taken, counsel on appeal may have access to the

5   sealed report without further application to the Court.

6        Although courts are no longer required to follow the

7   sentencing guidelines, we are still required to consider the

8   guidelines in imposing sentence, and to do so it is necessary

9   that we accurately calculate the sentencing range.

10        There is a plea agreement in this case.

11        Mr. Ray pleaded guilty on March 28, 2023, to Counts

12   One through Five of the superseding information.

13        Count One charges Mr. Ray with wire fraud, including

14   while released on bail, in violation of 18 U.S.C. Sections 1343

15   and 3147.

16        Counts Two, Three and Four charge the defendant with

17   wire fraud, in violation of 18 U.S.C. Section 1343.

18        Finally, Count Five charges Mr. Ray with aggravated

19   identity theft, in violation of 18 U.S.C. 1028A(a)(1) and

20   1028A(b).

21        In the plea agreement, the parties stipulated to a

22   particular stipulation of the guidelines, which resulted in an

23   offense level of 35, criminal history category of II and a

24   guidelines calculation of 188 to 235 months' imprisonment

25   followed by a mandatory consecutive term of 24 months'

NbsWrayS

imprisonment for Count Five, resulting in a total stipulated

guidelines range of 212 to 259 months' imprisonment.

The presentence report, however, contains a different

calculation.  Specifically, probation declined to include a

two-level enhancement for acts of fraud in connection with

major disaster relief or emergency benefits.  Because the

COVID-19 loan programs at issue in this case were created by

acts of Congress -- and not authorized pursuant to a Stafford

Act emergency declaration -- the presentence report found that

Mr. Ray did not qualify for the enhancement.

Thus, the presentence report calculated the offense

level at 33, the criminal history category at II and the

guidelines range of 151 to 188 months' imprisonment followed by

a mandatory consecutive term of 24 months' imprisonment for

Count Five, resulting in a total guidelines range of 175 to 212

months' imprisonment.

Based on my independent evaluation of the sentencing

guidelines, I agree with the presentence report and find that

the offense level is 33, the criminal history category is II

and the guidelines range is 151 to 188 months' imprisonment

followed by a mandatory consecutive term of 24 months'

imprisonment for Count Five, resulting in a total guidelines

range of 175 to 212 months' imprisonment.

Because Mr. Ray pleaded guilty to aggravated identity

theft, in violation of 18, United States Code, Section

NbsWrayS

1    11028A(a)(1), there is a statutory mandatory minimum term of 24

2    months' imprisonment, which must run consecutively to any other

3    sentence imposed.

4            Now I will hear from the parties.

5            Does the government wish to be heard with regard to

6    sentencing?

7            MR. WEINBERG:  Yes, your Honor.

8            And the government would also note, as I believe your

9    Honor's aware, that there is a victim present, who is prepared

10   to make a victim impact statement.  There are also, I believe,

11   just for purposes of the record, approximately 50 individuals

12   who appear to be dialed in to the conference line.  It's

13   difficult to say how many exact number total victims that is,

14   but 50 dialed in at least to the conference line.

15           Should the government proceed now, or does the Court

16   wish to hear from the victim now?

17           THE COURT:  Well, what is your preference?  Do you

18   prefer to have the victim heard first?

19           MR. WEINBERG:  Whatever the Court thinks would be more

20   helpful is totally acceptable to the government.

21           THE COURT:  All right.  I will have the victim step

22   forward then.

23           You may go ahead.

24           MS. ESTOPO:  Thank you, your Honor.

25           My name is Kari Esposto, and I am one of the nearly

NbsWrayS

| | |
|---|---|
| 1 | 300 victims of Frank Ray.  I flew in from Chicago this morning, |
| 2 | taking a day off from work and making arrangements for my |
| 3 | five-year-old and two-year-old sons because I'm eager to |
| 4 | finally see justice served today. |
| 5 | Before I get started, I want to recognize, commend and |
| 6 | say thank you to a few key folks, who we wouldn't be here |
| 7 | without. |
| 8 | First, Matthew Weinberg and Robert Stout.  Upon |
| 9 | speaking in March 2022, I had 100 percent confidence an |
| 10 | indictment would happen soon thereafter.  And sure enough, it |
| 11 | did.  Thank you.  We wouldn't be here without your |
| 12 | responsiveness to my outreach, your hard work, persistence and |
| 13 | pursuit of justice. |
| 14 | Second, Wendy Olsen, the victims coordinator. |
| 15 | Wendy, thank you for being there for us and always |
| 16 | being responsive and helpful.  Your role is an important one, |
| 17 | and you do it very well. |
| 18 | And last but not least, while we have not personally |
| 19 | met, Damian Williams.  I have closely followed the cases and |
| 20 | work that you have been overseeing and commend you.  I have |
| 21 | full trust that narcissistic men and con women, like Frank Ray, |
| 22 | who I am about to address, will be found and brought to |
| 23 | justice. |
| 24 | Now, for my thoughts. |
| 25 | In a traditional victim statement, one would share the |

NbsWrayS

1     details of the significance the crime had on them personally.

2     While I personally have never made a worse decision than I did

3     here, I am electing to share an unconventional victim statement

4     and not make this about me.  I could talk about the six-figure

5     loss that I suffered due to Frank's actions or the 600K loss

6     members of my extended family suffered, or even the $40,000

7     life savings loss suffered from the cleaning lady down in Miami

8     who I spoke to on the phone, when relentlessly pursuing justice

9     behind the scenes.

10            I will, however, table any of those stories because,

11    Judge Torres, I know honestly that Frank doesn't care about

12    that.  In a situation where one can lie, manipulate and harm

13    literally hundreds of people over and over and over again, me

14    talking about the hardship made to myself and others really

15    means nothing to him.

16            Instead, your Honor, it's more important for me to

17    share illustrative details of the impact Frank made to others,

18    emotionally, via his narcissistic actions and actions that

19    really, truly only demonstrated he only cared about one

20    person -- himself.

21            To familiarize yourself with yourself, Frank, let me

22    illustrate how your games played out on the emotional

23    well-being of your victims.

24            First, by definition, a narcissistic person has a

25    sense of entitlement.

NbsWrayS

1          In one of our conversations, after I figured out this

2     was a scam, I remember I told you on the phone:  "You're

3     ruining the lives of so many people.  Don't you even care?"

4          Your response:  "Well, I never told anyone to give me

5     all their money."

6          You knew your game was coming to an end, and instead

7     of acknowledging the pain you caused to so many, you were true

8     to the narcissist that you are, lacking empathy and

9     illustrating entitlement to the money of others.

10          Next, by definition, a narcissistic person has a

11     preoccupation with power and a need for admiration.  They often

12     can be very charming and charismatic.

13          One of the things that makes me the most sick is to

14     think of the calls you had with all your victims.  They

15     involved people thanking you, Frank, praising you, and you

16     eating it all up, saying that you were only doing this to help

17     people.

18          As a narcissist, part of your M.O. is to seek

19     compliments and approval of which you did from your victims

20     over and over and over again.

21          Next, by definition, narcissistic people are arrogant.

22          Whether it was the supposed contracts with Amazon or

23     then FedEx or even how you looped in a lawyer to put things at

24     ease in February, your arrogance never tipped below a 10 out of

25     a 10.

NbsWrayS

1          As a narcissist you pride yourself on putting others

2   down and acting more powerful than them.  Unlucky for you,

3   Frank, you met your me and your match, and your arrogance

4   didn't intimidate me to work endlessly to make sure that your

5   game was busted open.

6          Next, by definition, narcissistic people are

7   manipulative, lacking empathy.

8          There are so many examples of this, but the one that

9   stands out to me the most is you sending Christmas cards to

10  your victims in December of '21, expressing your gratitude for

11  being a part of the CSA business.  I sent you a card back that

12  was a picture of my family, including my two sons, who were

13  three months old and three years old at the time.  It made me

14  sick up until a few months ago to even look at that picture of

15  my precious family, because all I could do was picture you

16  looking at it, laughing, and then stealing more of our money.

17         As a narcissist, it didn't matter who your victims

18  were, what they were going through in their life, and like a

19  true narcissist, you only cared about yourself and manipulated

20  everyone to the highest degree possible, even through the joy

21  that is supposed to be sent with Christmas cards.

22         Lastly, by definition, a narcissistic people exploit

23  for their own gain.

24         This one's pretty obvious.  And while there's not one

25  person that really understands your end game, I'm convinced

NbsWrayS

1    that pleasing yourself, even for a short time period, was more

2    important than anything else to you -- even how you value and

3    think about your family.  For me, my dad, who you stole from as

4    well, is the No. 1 person I look up to and admire.

5    Unfortunately, that's not the case for you and your family,

6    because if you truly cared about them, you would have written

7    your story a little differently.

8            If you cared about your family over yourself, you

9    would have made different choices.  After getting out of prison

10   last time, you would have demonstrated to your kids that you've

11   changed.  If you cared about your family over yourself, you

12   wouldn't have involved your son in sending emails and

13   communications to your victims while you continued to steal

14   money from hundreds of people.

15           If you cared about your family over yourself or even

16   equally to yourself, you wouldn't have put them at risk because

17   so many of your victims were so angry at you, threatening to

18   come to your house, residence, and force you to turn over their

19   money.

20           But really, Frank, the No. 1 person you care about and

21   will always care about is yourself.

22           And Judge, this isn't going to change.

23           So, Frank, my wish for your kids, especially your

24   daughter, is that she perseveres through the F-ups that her dad

25   has made and has a story to tell.  My hope is that one day she

NbsWrayS

1  can have the type of success you always wanted and share her

2  journey with other kids that she mentors that have incarcerated

3  parents.  My wish is that she lives by the motto to never be

4  like her dad.  I hope that she finds her own path and people

5  that she looks up to because, quite frankly, Frank, you failed

6  her.

7           So with that, Frank, I hope that you enjoy your

8  holidays with yourself as you're truly the only person you care

9  about, and you get to be all by yourself all the time now.

10          Your Honor, my ask is that you don't go lightly on

11  Frank today.  On behalf of the nearly 300 victims, please

12  impose the maximum sentence on Frank Ray.  He will never change

13  and truly has nothing worthy to contribute to society.

14  Anything less than the maximum sentence, quite frankly, will be

15  a disappointment.

16          And my last ask, on behalf of everyone on the call,

17  with me, and everyone, please work with the Department of

18  Justice to quickly move and fairly distribute the funds that

19  are frozen today.

20          Thank you so much.  I appreciate being here.

21          THE COURT:  Thank you.

22          Mr. Weinberg.

23          MR. WEINBERG:  Thank you, your Honor.

24          It will be difficult for the government to add too

25  much more to that, but I'll do my best and say a few words.

NbsWrayS

1          So, I think it is clear that the government thought

2     long and hard about the appropriate sentence in this case.  And

3     what's our request?  We believe that the sentence proposed,

4     which is the same sentence proposed by probation, which is 15

5     years on the fraud schemes and then two mandatory additional

6     years in connection with the aggravated identity theft, is just

7     the right sentence in light of this conduct.  We think it is an

8     entirely reasonable request.  It is absolutely a lengthy right

9     for a white collar case, a fraud case, but it is eminently

10    appropriate here.  And I won't rehash everything that is in the

11    sentencing submissions -- the Court went through the list; I

12    know they were quite lengthy -- nor the over 150 pages of

13    victim impact statements, but I do want to stress a few points.

14          First, as the Court knows, there are four separate

15    fraud schemes at issue here.  Most of the attention and the

16    biggest fraud is what we call the truck investment scheme, the

17    Ponzi scheme, which had 300 victims and involved about $40

18    million of deposits, approximately $20 million of loss.  It's

19    is understood that the restitution figures -- we'll get to

20    that -- are still being determined, but it's approximately $20

21    million of loss.

22          So, four schemes.

23          For the better part of two years, the defendant simply

24    did not stop scamming.  It was one fraud after another.  Every

25    person was a mark, and every situation was an opportunity to

NbsWrayS

enrich himself illegally.  Each of the schemes on their own
would warrant a significant sentence.  In the aggregate, they
warrant the sentence requested by the government and by
probation.

It's also important, as the Court is well aware, that
one of the schemes, the truck investment fraud scheme, had two
distinct but very significant faces.  There's the prearrest
conduct and there's the postarrest conduct.  Each of these
frauds are incredibly serious crimes on their own and would
warrant a very significant sentence on its own, but the
postarrest conduct is just shocking.

The defendant was arrested on March 2, 2022.  He
immediately went back to continuing a Ponzi scheme and stole
approximately two million additional dollars from investors
after March 2, 2022, until he was indicted in connection with
the Ponzi scheme on April 19, 2022.  He continued to lie.  He
hid the fact of his arrest from his investors.  He told
incredible fairytales and stole, all the while knowing that he
was under federal charges, that a day would come where he would
be in a courtroom answering fraud charges, and yet he was
taking money from victims after his arrest.

Those $2 million didn't -- the investors who paid $2
million after his arrest on March 2 did not receive any money
back.  OK?  That was just stolen money after March 2, 2022.

It's also important to recognize here just the scope

NbsWrayS

1    and depth of the fraudulent conduct.  The defendant's entire

2    life, his entire business -- and I put business in quotes --

3    was a lie.  OK?  This is not a case where an otherwise

4    successful businessperson got a little greedy around the edges

5    or there was a downturn in the business and cut some corners

6    and did some things they shouldn't do.  This is a case about

7    someone who just fabricated an entire life for himself.  His

8    business, in all material respects, did not exist.  The

9    connections he had to what we called the shipping company and

10   the e-commerce company did not exist.  It was total fabrication

11   by the defendant.

12         We also want to highlight just a few anecdotes that we

13   think speak to the depravity of the conduct at issue in this

14   case and the need for the sentence not only to promote respect

15   for the law and reflect the gravity of the offense but, quite

16   simply, to protect the public from future crimes of the

17   defendant.

18         First, the government addressed in its letter that

19   there is the manipulation and use of Joseph Winget, Joseph

20   Winget's wife and the person identified in the court filings as

21   individual 1.  The Court has read letters from Mr. Winget's

22   wife and from individual 1.

23         The government, in its submission, also provided some

24   background about how Mr. Winget had previously lost his

25   retirement savings in an investment in the defendant's prior

NbsWrayS

1   trucking company.  The defendant preyed on individual 1 and

2   Mr. Winget and Mr. Winget's wife.  They trusted him, and they

3   paid dearly for that trust.

4            Also, both are addressed in the submission and we

5   provided exhibits with video recordings and audio recordings.

6   The government just wants to highlight the meeting in December

7   2021, that took place in Florida, where there were many victims

8   in attendance and the defendant spoke for 45 minutes about his

9   business, all total lies, completely made up.  He spoke about

10  how he was doing this to help people.  Again, lies.  Not true.

11           He talked about his family and succession plans for

12  his business.  He felt comfortable standing in a room full of

13  people and just completely lying to them and stealing their

14  money, pretending to be something he was not.

15           There was also, in March 2022 -- we've provided an

16  audio recording of this to the Court -- there was the meetings

17  that the defendant had, and then to be clear, after his arrest

18  on March 2, 2022, to his indictment on April 19, 2022 --

19  Ms. Eposto spoke to this and it's discussed in the submissions

20  and the exhibits.  There were many, many discussions between

21  the defendant and his victims.  And he actually hired somebody

22  to help, you know, be a middle person for those discussions, a

23  person who the government has not alleged was involved in the

24  scheme, but who the defendant hired to respond to questions

25  from the victims.  OK?

NbsWrayS

1          So there were many, many, many communications in which
2     the defendant lied to his victims after March 2, 2022.  But the
3     meetings, those Zoom meetings that we have recordings of, shed
4     so much light on who the defendant is and on the defendant's
5     conduct.
6          He gets on these calls.  He knows he has been charged
7     with crimes.  He knows that the reason he has not paid money in
8     his Ponzi schemes is that the government has seized his bank
9     account, and he tells completely made up, fabricated stories,
10    about the various storms that his business is facing.  He talks
11    about tons of trucks that have returned to CSA Business that he
12    now has to deal with and how difficult that has been while also
13    trying to figure out the payroll for all the investors.
14    Totally made up.  There were not tons of trucks returned to the
15    CSA Business.  CSA Business owned a couple of trucks which were
16    only purchased to help cover the defendant's scheme after the
17    defendant had stolen money as part of his other fraud schemes.
18    Just utter fabrications on those calls after the defendant had
19    been arrested and charged with crimes.
20         There's also, I think, an illustrative story addressed
21    at page 20 of the government's sentencing submission, and it
22    relates to the victim that's identified as victim 42.
23         This is an individual who was an investor of Mr. Ray's
24    prior to Mr. Ray's arrest in March 2022 and had been reasonably
25    happy with the investment performance.  He had planned to make

NbsWrayS

a $400,000 investment in Mr. Ray's business.  After Mr. Ray

struggled to make payments in early March 2022, this victim

decided maybe there's something going on here, maybe I should

not invest my $400,000 in this business, maybe there's better

things I should do with my money.

The defendant then somehow manages to steal enough

money from other sources to make a payment to this victim, to

the person we've identified as victim No. 42.  This is

postarrest.  That payment essentially makes that victim, victim

42, break even.  It might put him a little bit in profit for

his overall investment in the company.  Victim 42 says OK, I

guess, actually, maybe I was wrong, payments are being made

now, it's legitimate.  Writes a check for $400,000 that goes to

the defendant after the defendant's arrest.

Of course, it's obvious, but I'll say it, that victim

did not see a dime out of that $400,000 that he paid after the

defendant's arrest.  I think that story speaks to the

manipulation, the deceit and the defendant's willingness to

just do anything he needed to do to continue his fraud, again,

at a time where he absolutely must have known a day like this

would be coming.

Finally, the government is concerned about the

defendant's continued misrepresentation and obfuscation of the

scope of the crime here.  The government is not challenging the

defendant's acceptance of responsibility.  He gets three points

NbsWrayS

under the guidelines.  He pled guilty, acknowledged that he did

the crimes.  No question.  But the government has serious

concerns about whether the defendant has fully acknowledged the

scope of his conduct and that he is still trying to minimize

it.  The government's concern specifically is that absent such

acknowledgment of the scope of his crimes, the government is

very concerned that the defendant will reoffend.  How can we

ever trust that the defendant will not go back to his ways of

conning and scamming, if even today -- even today -- he is

still telling incredible tall tales about what happened here?

So one example of this -- there's a bigger one, but

just one note.  The Court is aware there have been discussions

about restitution and forfeiture and what would be consented to

and not consented to by the defendant.

The defendant has now consented to forfeiture of all

the specific property identified by the government, including a

1968 Chevy Camaro.  I'll let the defendant speak to this if

this is mistaken, or defense counsel, but my understanding is

that the defendant was willing to consent to that because he

understood that it was his rights to the car that was being

forfeited, not any family member to whom the car might be

titled.  Now, of course, the defendant's family member will

have an opportunity to, you know, seek to put in a claim for

that car during forfeiture proceedings.  That person has an

absolute right to do that, and that will be handled.  But it's

NbsWrayS

1     just amazing.  This is not a close call.  The government has

2     the records and all the documents that clearly show that this

3     car was paid for right out of the bank account that all of the

4     fraud money is going into.  The investors give the defendant a

5     bunch of fraud money, a bunch of, you know, investments in his

6     fake business, the defendant goes out and buys a car.  If the

7     defendant was truly accepting responsibility, he would want

8     that car to be sold and his victims to be made whole or at

9     least help contribute to the victims being made whole.  So

10    that's one issue.

11         But the second one, and this is much more significant,

12    in the government's view, is the statements made by the

13    defendant to Dr. Drob, and it's both on his prior arrest on

14    page 3 of Dr. Drob's report, which is attached, I believe, as

15    exhibit B to the defendant's submission, and his statements

16    about the current charges on pages 5 to 7.  Now, of course,

17    this is Dr. Drob's summary of what the defendant said.  It's

18    not the defendant's own writing, but still, it's telling.

19         This was from August of this year.  OK?  And Mr. Ray

20    is still saying things like --

21         MR. STRAZZA:  May I?

22         I'm sorry to interrupt, Mr. Weinberg.  I just want to

23    remind everybody that this document was filed under seal, so

24    I'm not sure where the government is going.  But I would just

25    remind everybody of that.

NbsWrayS

1          MR. WEINBERG:  I was in no way intending to reveal any

2     sort of medical or other diagnoses referred to in here.  I

3     think that the defendant's statements about his conduct and the

4     way it speaks to his acceptance responsibility, or lack

5     thereof, is highly relevant to sentencing.  I can just point

6     the Court to it.  I won't read from it, but I just want to make

7     a few points.

8          THE COURT:  Go ahead.

9          MR. WEINBERG:  And I have highlighted a few points,

10    but I will not read them.  The bottom line is the Court --

11         THE COURT:  You can direct me to the page.

12         MR. WEINBERG:  Yes.

13         THE COURT:  The paragraph.

14         MR. WEINBERG:  OK.  So, it's pages 5 to 7.  There's

15    discussion of the current charges.  OK?

16         There is, for example, on page 6, the third paragraph

17    talks about his assistance of other people in committing these

18    frauds.

19         The next paragraph, the fourth paragraph down on page

20    6, talks about how somebody else wanted him to get an airplane

21    and things he did for that person.

22         The following page, the top of page 7 and then the

23    very last line of it, talks about people used him for his

24    knowledge and he was misled by others, ignored what was going

25    on.

NbsWrayS

1      It's just incredible that in August of 2023, a year

2  and a half after his initial arrest, more than a year after his

3  indictment, five months after his guilty plea, this is still

4  how the defendant sees the conduct here.  The Court has seen

5  the video of the defendant in Florida at that investor meeting.

6  The Court has heard the defendant's voice and own words on

7  those recorded Zoom meetings in March 2022.  There is nobody

8  putting the defendant up to this.  There is nobody on whose

9  behalf he is doing these crimes other than himself.  He was --

10  it's not even the right word to say "mastermind," because that

11  suggests that perhaps other people were involved.  He was the

12  fraudster for the truck investment fraud and for these other

13  crimes.  We haven't even addressed what we call the joint

14  venture fraud, but that was all the defendant.  There was

15  nobody else involved in that.

16      So even in August of this year and even, you know --

17  well, even in August of this year, the defendant is unable to

18  acknowledge what he has done.  And this is a man who has a

19  prior fraud conviction, which the government believes he also

20  minimized and misstated in Dr. Drob's report at page 3 as

21  compared to the PSR, paragraph 104, which provides a detailed

22  description of that case.  He's got a prior fraud conviction.

23  He got out of jail in 2010.  You know, in the mid-2010s, around

24  2016, he gets an investment from Mr. Winget that goes sideways.

25      Then in 2020 he's committing PPP fraud.  He's using

NbsWrayS

people's identities to commit PPP fraud.  He's conning a

business, a New York City business out of money by getting them

to make a payment for a joint venture which he just used for

personal expenses.  And of course, he's committing the truck

investment fraud.  And he's still trying to rely on the fact

that -- there's one other thing in here that I should flag.

It's on page 7, the first paragraph, last sentence,

talks about how, you know, other people -- the bank account was

in other people's names, they were the ones signing the checks.

So he's still trying to argue that those are the people who are

really doing all this, that they're signing on the bank

account.  Well, of course they're signing everything, because

they're doing whatever the defendant told them to do because

they trusted the defendant and he had used and preyed and

manipulated them into that trust.

So, of course, the government's happy to address any

questions the Court has, but the government believes that, in

light of the conduct here, the scope, the number of frauds, the

postarrest conduct, the continued inability to accept the full

scope of what was done, a sentence of 15 years on the fraud

counts followed by two years on the aggravated identity theft

is absolutely necessary not only to promote respect for the

law, not only to reflect the seriousness and gravity of the

offense, but very, very significantly, to protect the public

from future crimes of the defendant.

NbsWrayS

1              Thank you.

2              THE COURT:  Before I go on to Mr. Strazza, I'm going

3    to take a brief pause.  I will be back shortly.

4              (Recess)

5              THE COURT:  All right.  Counsel, you may be heard.

6    Please be seated.

7              MR. STRAZZA:  Your Honor, may I have Mr. Ray speak

8    first, please?

9              THE COURT:  That's fine.

10             MR. STRAZZA:  Thank you.

11             THE DEFENDANT:  First, I want to thank the Court for

12   allowing me to speak.  I want to thank the work that the United

13   States government has done, my staff -- my legal team.

14             Your Honor, I am truly sorry.  I stand before you to

15   accept what I've done even though I'm hearing that I didn't

16   accept it.  My attorney told me that I need -- he wanted me to

17   see Dr. Drob here in New York, and I answered the questions

18   that he asked and what I thought at the time.

19             Listening to the victim talk, I -- it -- it pains me

20   to hear that.  I've destroyed my family's life for a second

21   time.  There is no fixing it.  My wife has stood beside my side

22   for 26 years and dealt with my stupidity.  Only your Honor can

23   see that and wonder why would this man do this again?

24             When I got involved in all this, it was -- it was to

25   build something, to have something, and it spiraled so bad that

NbsWrayS

1    all I can do is thank the agent for stopping me.  I can't say

2    I'm sorry enough to my family and these victims.  I wish that I

3    knew why I did these things.  And I think part of that is my --

4    my thing for doing these things is maybe I don't understand why

5    I'm doing it.  I'm not realizing something.

6         I mean the victim talking about her father, that's the

7    only one I had all my life, until I met my wife.  And in 2001,

8    you know, I lost pretty much my entire family in three years --

9    my mother, my father, my grandfather.  And I just -- I wish I

10   would have had a better mind-set and understand.  And I want

11   the Court to impose the sentence that the Court feels

12   appropriate and maybe help me.

13        I can't -- I'll never be able to repay the victims, as

14   much as I want to.  I just -- I'm sorry, your Honor.  I'm sorry

15   to the victims, and I'm sorry to my family.

16        Thank you.

17        THE COURT:  Mr. Strazza.

18        MR. STRAZZA:  Your Honor, I wasn't planning on getting

19   into Dr. Drob's report, but, you know, now that we have, I've

20   spoken to Mr. Ray about it, and I do think it's necessary to

21   address the report.

22        The one thing that I've taken -- one of the things

23   I've taken out of the report is that Mr. Ray's desire to be a

24   successful businessman, in his own words, has sort of

25   sparked -- to say poor decisions does not even describe it, but

NbsWrayS

1    his crimes, his crimes, his criminal conduct.

2          From what I take out of what he's saying to the Court

3    now, from what he said to Dr. Drob and even from what we heard

4    before, he needs help.  He needs help.  He makes -- he

5    certainly puts his own interests above that of society.  He did

6    so here.  He's done it in the past.  But what's different about

7    this fraud case and what struck me is that he doesn't -- he

8    didn't take the money here and live a lavish lifestyle and get

9    a fancy home and fancy cars and things like that.  And the way

10   he explains it to me is that somehow -- and I can't explain it.

11   But somehow he thought or his goal was to somehow turn this

12   into a business.  And I can't sit here and explain how he

13   thought that was going to happen, but I can say that he's sick.

14   He needs help.

15         The way he thinks leads to his criminal conduct here

16   and has in the past, and I don't think it's accurate to say he

17   hasn't accepted responsibility.  Rather, I would respectfully

18   submit it's consistent with his mental health issues.  So the

19   explanations that he gives, that he gave, his actions,

20   obviously, I believe, are consistent with his mental health

21   issues.  That's not an excuse.

22         THE COURT:  Are you saying that mental illness is an

23   excuse for bad behavior?

24         MR. STRAZZA:  No.  I was actually, your Honor, in the

25   process of just saying that is absolutely not an excuse

NbsWrayS

whatsoever, and there are a lot of people who do deal with
mental health issues who do not commit crimes, especially
crimes as serious as this.  I'm offering it as an explanation,
not an excuse.  I'm trying to present the Court with all the
facts that have been presented to me.  So no, in no way
whatsoever.  I would not disrespect the victims.  I would not
disrespect the Court or Mr. Ray by sitting here and making
excuses for his criminal conduct here.

Rather, I offer it as an explanation as to what makes
sense to me based upon what has been presented to me.

With that being said, Mr. Ray has absolutely accepted
responsibility for his crimes.  He stood here, he's standing
here now.  He pled guilty knowing that he is going to receive a
substantial sentence from the Court here, and I think based
upon what he just told the Court, I think we can tell that he's
accepted responsibility.

So I don't think it's fair, and again, I don't want
to -- I don't even think it's necessary to argue this point,
but I don't think it's fair to take this interview with a
forensic psychologist, who explained his opinion of Mr. Ray's
mental health issues and use that against him and say he hasn't
accepted or he's not accepting responsibility for this.  I
respectfully submit to the Court it's just further evidence of
the issues that he has and that he has to work on.

But taking a step back from that, Mr. Ray, I think

NbsWrayS

1   it's obvious he's extremely remorseful for his conduct.

2   There's nothing he can say or there is nothing I can say right

3   now to make the victims feel any better about what happened to

4   them.  They're angry.  I understand it.  They've suffered

5   hardships.  I understand that as well, so I'm not going to

6   stand up here and try and make light of his conduct or, you

7   know, try and say that it's not as bad as it's been presented

8   to the Court.  That was never our intention today.

9        We're here to accept responsibility.  We know he's

10  going to receive a substantial sentence.  But I would be remiss

11  for not mentioning what I just said to the Court.  I think

12  that's my job, and I think that's the only thing that makes

13  sense to me out of all this.

14       With respect to the sentence that the Court is going

15  to impose today, I think we can all agree that the guidelines

16  call for a substantial sentence, in my opinion.  I respectfully

17  submit it's greater than necessary to achieve the statutory

18  purposes of sentencing, as outlined in 3553(a).  For example,

19  we asked for a significant sentence but a below-guidelines

20  sentence.  So if the guidelines start at 12-1/2 years for the

21  fraud counts, I respectfully submit to the Court that a

22  sentence of 10 years, for example, would accomplish the same

23  purposes of sentencing that 12-1/2 would.  At some point we get

24  to a number that is just, all it does is institutionalize a

25  person.  If we really are going to consider the statute and we

NbsWrayS

1    are talking about deterrence to future criminal conduct, the

2    need to protect the public and the need to rehabilitate the

3    defendant, I think after we get to a certain point, it's

4    overkill, your Honor.  And I think it actually has an adverse

5    effect on those principles, by institutionalizing the

6    defendant, and it's just overkill, in my opinion.

7         A decade is a long time, Judge.  I respectfully submit

8    that anything more than that would be just unduly harsh here

9    and greater than necessary.

10        I would, and again, just because I think it's my job

11   to address these points, I want to speak on several things

12   before your Honor imposes sentence.

13        No. 1, there was reference in the government's

14   memorandum to solicitation, you know, Mr. Ray soliciting

15   donations for toys and things around Christmastime.  I've been

16   in contact and discussions back and forth with the government

17   since they've submitted their submission, and I've provided

18   them with contact information that Mr. Ray has provided to me,

19   which shows that Mr. Ray did donate a significant amount, a

20   truckload, full truckload of toys around Christmastime,

21   presumably the results of donations that he received.  And I

22   don't -- again, I don't want to insult the victims here by

23   making a bigger issue out of this or a bigger point than it is,

24   but it wouldn't be fair to Mr. Ray if I didn't address it at

25   all and if your Honor was never made aware of it.

NbsWrayS

1        Again, I don't think it changes and I'm not sitting

2   here saying it changes the sentence that Mr. Ray should receive

3   today, but I do think the Court should be aware of it, that

4   there are certain things that may have been overstated

5   unintentionally, not on purpose or not in any malicious way.

6   That was one of them.

7        Mr. Ray did make significant donations of toys around

8   the holidays that have, I believe -- and I won't speak for the

9   government, but after providing the government with contact

10  information and things of that nature, I think that was

11  corroborated.  But I would let them speak on that if they

12  wanted to.

13       With respect to, there is a, what we haven't addressed

14  here is the restitution issue.  I don't know if the Court had

15  specific questions about that, but again, I just want to make

16  sure that's not being misconstrued as Mr. Ray failing to accept

17  responsibility.  It's just there were significant errors in the

18  calculation that, based upon, again, our conversations -- and I

19  don't think they were intentional and there are a variety of

20  reasons and explanations on how they happened.  For example,

21  there's victims that payments were made in company names and

22  regular names and things of that nature.  So again, I do not

23  want to sit here and I don't want this to be looked at as

24  affecting his acceptance of responsibility, but at the same

25  time, I do have a job to do, and the Court should be aware of

NbsWrayS

1    these things.

2        If Mr. Ray's calculations are correct and if there is

3    a discrepancy, you know, in the millions-of-dollars range, I

4    just think the Court should be aware of it, and then the Court

5    can make a determination on whether that affects the Court's

6    determination of an appropriate sentence or not.  But I don't

7    think I would be doing my job if I just stayed silent on that.

8        Obviously everything I mentioned earlier, since I've

9    stood up, is much more important than these issues, but I

10    wanted to bring them up to the Court.

11        THE COURT:  Is there any reason why sentence should

12    not be imposed at this time?

13        MR. WEINBERG:  No, your Honor, except the government

14    would briefly address some of the points.

15        THE COURT:  You may briefly.

16        MR. WEINBERG:  I'll be brief.  I promise.

17        First of all, just to be very clear, for the record,

18    of course the government is not suggesting the defendant has

19    not accepted responsibility for purposes of the guidelines or

20    anything of that nature.  But his statements about the conduct

21    as of August 2023 are certainly relevant as a 3553(a) factor.

22        Second, just briefly, with respect to the Christmas

23    toys, and I don't understand defense counsel to be making a

24    bigger deal of this than -- suggesting that this is some major

25    issue.  So I appreciate that, but I'll just confirm, yes, the

NbsWrayS

government understands that there were Christmas toys, toys
donated on behalf of the defendant.

It's not clear exactly how that came about, and of
course, this email refers to ten families that the Ray family
helps during the holiday season and asks for victims to send
money, investors to send money.  Money was, in fact, sent.  It
is certainly not correct to say that the defendant had ten
families that they regularly helped during the holiday season
or anything like that, but some -- you know, there was a
significant donation of toys.  It's impossible for the
government to say whether it was every dollar that was donated
or not.  But either way, the fact of this email and the clear
intention to curry favor with investors, make them think the
defendant is a family man, a good person, charitable person, is
not at all relevant.

And then just the very last thing, on restitution,
again, I just want to stress that the initial list that was
sent to defense counsel was entirely intended to be a draft.
The whole point was that the parties would diligently work
together toward sentencing to identify issues.  The defendant
obviously would have important insight into where the mistakes
could lie, and so when that initial list was sent, there's a
reason it was not also sent to the Court, because it was not
final.  So the fact that there are some -- I think defense
counsel described them as errors.  The fact that there were

NbsWrayS

1    some numbers in there that have to be corrected is not terribly

2    relevant to where we are today.  It was a preliminary draft,

3    and the whole point was let's figure out where the issues are;

4    the government is not done with this.  It's going to do its own

5    work as well.

6          With that, the government rests on its submission and

7    earlier statements.

8          THE COURT:  Is there any reason why sentence should

9    not be imposed at this time?

10          MR. WEINBERG:  No, your Honor.

11          MR. STRAZZA:  No, your Honor.

12          THE COURT:  The mandatory minimum sentence is 24

13    months' imprisonment.  Further, as I have stated, the total

14    guidelines range to be used in this case is 175 to 212 months'

15    imprisonment.

16          Under the Supreme Court's decision in *Booker* and its

17    progeny, the guidelines range is only one factor that I must

18    consider in deciding the appropriate sentence.  I am also

19    required to consider the other factors set forth in 18 U.S.C.

20    Section 3553(a).  These include:

21          First, the nature and circumstances of the offense and

22    the history and characteristics of the defendant;

23          Second, the need for the sentence imposed to reflect

24    the seriousness of the offense, to promote respect for the law,

25    and to provide just punishment for the offense; to afford

NbsWrayS

1    adequate deterrence to criminal conduct; to protect the public

2    from further crimes of the defendant; and to provide the

3    defendant with needed education or vocational training, medical

4    care or other correctional treatment in the most effective

5    manner;

6            The kinds of sentences available;

7            The guidelines range;

8            Any pertinent policy statement;

9            The need to avoid unwarranted sentence disparities

10   among defendants with similar records who have been found

11   guilty of similar conduct; and

12           The need to provide restitution to any victims of the

13   offense.

14           Ultimately, I am required to impose a sentence

15   sufficient but no greater than necessary to comply with the

16   purposes of sentencing that I mentioned a moment ago.

17           I have given substantial thought and attention to the

18   appropriate sentence in this case, in light of the Section

19   3553(a) factors and the purposes of sentencing, as reflected in

20   the statute.

21           I will first address the history and characteristics

22   of the offender.

23           Mr. Ray had a challenging childhood.  As described in

24   the mitigation report, his mother abandoned the family shortly

25   after Mr. Ray was born, and his father worked as a long-haul

NbsWrayS

trucker, leaving Mr. Ray and his sisters to fend for
themselves.

When he was a teenager, his father lost the mobile
home they lived in, and Mr. Ray was passed around to live with
several different relatives and family friends.

Mr. Ray joined the U.S. Army Reserves in 1989 and
served in active duty as part of Operation Desert Shield/Desert
Storm.  He was honorably discharged in 1997.

Mr. Ray has two children ages 25 and 22 with his wife
Marsha.  The letters addressed to the Court from Mr. Ray's
family describe his sense of duty and his desire to care for
them.

Mr. Ray's son describes him as "fueled by wanting to
provide for his family."  Mr. Ray's daughter writes that she
could "count on him [to] show up" and that he put her
"education, well-being, and happiness first."

In considering Mr. Ray's character, I must also take
into account his criminal history.

This is not the defendant's first offense.  In 1990,
Mr. Ray was convicted of writing checks on an overdrawn
account, which resulted in the imposition of six months'
probation and restitution.  In 1992, he was convicted of
removal of a chattel mortgage, resulting in a sentence of 30
days in custody and 18 months' probation.  And in 2008, Mr. Ray
was convicted of bank fraud and wire fraud, resulting in a

NbsWrayS

sentence of 24 months' imprisonment and over $1 million in
restitution.  That conviction stemmed from several fraudulent
schemes, including creating invalid checks from his employer's
account and depositing them into his personal bank account, and
then when the fraud was discovered, wiring money from another
company account to his own account to cover the losses.
Mr. Ray also procured various services such as chartered
flights and security for which he never paid.

Although previously convicted of fraud and sentenced
to time in federal prison, Mr. Ray was not deterred,
subsequently committing the fraud schemes that are the subject
of today's sentencing.

In addition to this criminal history and Mr. Ray's
character, I take into account the seriousness of the offense.
This was a crime with hundreds of victims.

From June 2020 to April 2022, Mr. Ray operated four
separate fraud schemes:

First, what the government refers to as the CSA
Business SBA fraud.  In this scheme, Mr. Ray fraudulently
obtained over $1 million in government loans intended to assist
small businesses during the COVID-19 pandemic.  Mr. Ray claimed
that these loans were supporting a trucking company that he was
involved with, named CSA Business.  He submitted fabricated tax
filings, bank statements, and payroll documents in support of
his loan application.  He then lied to lenders when they asked

NbsWrayS

1  for additional information and siphoned the funds for his

2  personal use.

3        Second, the Trucking Company-1 SBA fraud.  In this

4  scheme, Mr. Ray fraudulently obtained over $800,000 in

5  COVID-19-related loans for another trucking company that the

6  government calls trucking company 1, securing these loans by

7  submitting the same forged bank account statements and IRS

8  filings that he used for the CSA Business SBA fraud.  After

9  trucking company 1 received the first tranche of money from the

10  economic injury disaster loan program, Mr. Ray immediately

11  transferred some of the funds to his personal account and used

12  the rest for other personal and illegitimate purposes.  Mr. Ray

13  applied for this loan using the name, driver's license and

14  social security number of individual 1, who he convinced to

15  establish trucking company 1.

16        Next, Mr. Ray committed the joint venture fraud, in

17  which he fraudulently induced a Manhattan-based company to give

18  him $175,000 based on his false promises to set up a joint

19  trucking and logistics business.

20        Lastly, the truck investment fraud, a Ponzi scheme in

21  which Mr. Ray accepted approximately $40 million from about 275

22  investors.

23        In this scheme, Mr. Ray told potential investors that

24  he had a fleet of trucks making deliveries on behalf of an

25  e-commerce company, and in exchange for $20,000, he would

NbsWrayS

1    assign a truck to them.  Mr. Ray promised investors 77 percent

2    of the net income for each truck for seven years.

3         Mr. Ray created a culture of scarcity and exclusivity,

4    telling inquirers that no trucks were available, only to later

5    send an email stating that a new batch of trucks were available

6    to those who seized the opportunity quickly.

7         With each new investment, Mr. Ray perpetuated the

8    Ponzi scheme and enriched himself.

9         This was an elaborate scheme.  Mr. Ray hosted an

10    investor event at a hotel in Florida, sent holiday cards from

11    the sham company, hired a director of communications and sent

12    fabricated reports showing the performance of each truck.

13         In December 2021, Mr. Ray contacted his investors,

14    requesting contributions for needy families during the holiday

15    season.  Yet there is no evidence Mr. Ray gave any money to

16    charity or that these "needy families" ever existed.

17         Later, Mr. Ray told investors that if they agreed not

18    to receive one expected payment, they could switch their trucks

19    from making deliveries on behalf of the e-commerce company to

20    making deliveries for an international shipping company.

21    Mr. Ray said the move promised a larger, long-term return on

22    their investment.

23         This was another ploy to keep the Ponzi scheme going

24    and enrich himself.

25         Although investors recouped some of their investment

NbsWrayS

1    as part of Mr. Ray's efforts to keep the Ponzi scheme going, of

2    the $40 million Mr. Ray accepted from investors, upwards of $20

3    million has been lost to his personal gain.

4            The Court heard earlier from one of the victims of

5    Mr. Ray's Ponzi scheme.

6            In addition, the Court received numerous letters from

7    victims, detailing their experience with Mr. Ray and the

8    significant financial burdens, and in some cases financial

9    ruin, they now face as a result of his fraud.

10           The letters speak to the anguish and hardship these

11   victims have experienced and the immense damage caused by

12   Mr. Ray's scheme to their relationships with loved ones.

13   Multiple victims introduced their family and friends to

14   Mr. Ray, thinking they were offering a good investment

15   opportunity to people they cared for deeply.  As they wrote to

16   the Court, those relationships are forever tarnished, and in

17   some cases irreconcilably so.

18           In reviewing the victim impact statements, I was

19   struck by the number of victims on the cusp of retirement,

20   losing much, if not all, of their life's savings and retirement

21   accounts.  Many worry that they may never be able to retire or

22   will be forced to live in poverty through their later years.

23           The approximately 275 victims of this crime include a

24   young family with five children, a public-school teacher

25   putting her two children through college, a not-for-profit

NbsWrayS

organization working with low-income youth, a disabled woman

who was temporarily homeless as a result of Mr. Ray's scheme, a

cancer survivor who hoped to retire, a firefighter, a woman

struggling with her disabled child's medical bills, a

first-generation American who assists her parents with rent and

her sister with education expenses, a 63-year-old employment

specialist for disabled adults who earns $43,000 a year, and a

veteran and former steel worker.

These victims, who span the socioeconomic spectrum,

may never recover financially from Mr. Ray's scheme.  Further,

as I have stated, they will continue to suffer the

psychological and emotional repercussions of this crime for

years to come.

It is noteworthy that even after being arrested,

Mr. Ray continued the Ponzi scheme, accepting at least $1.9

million in additional investments between his arrest and

indictment.  Mr. Ray's postarrest scheming not only involved

existing investors but also the recruitment of new investors,

new lies and new manipulation.

Section 3553(a) requires the Court to consider the

need to protect the public, to provide just punishment for the

offense, and to deter further criminal conduct.

Mr. Ray's previous convictions, unfortunately, did not

deter him from engaging in further criminal activity.  Although

there will be a restitution order in this case, the reality is

NbsWrayS

1    that with upwards of $20 million lost, his victims are not

2    likely to be made whole.

3            In sum, my judgment, for the reasons stated, is that

4    there is abundant support for a guidelines sentence.

5            Accordingly, I do not believe that a variance pursuant

6    to 18 U.S.C. Section 3553(a) is appropriate.

7            Mr. Ray, please rise for the imposition of sentence.

8            It is the judgment of this Court that you are

9    sentenced to a total of 212 months of imprisonment.

10           For Counts One through Four, for each count, you are

11   sentenced to months' imprisonment to run concurrently.

12           For Count Five, you are sentenced to 24 months'

13   imprisonment to run consecutively to the Court's sentence for

14   Counts One through Four.

15   In addition, I am imposing a term of supervised release of five

16   years.

17           There will be no fine, although you must pay the

18   mandatory $500 special assessment, which shall be due

19   immediately.

20           Mr. Ray, you must also make restitution payable in an

21   amount determined by and to the victims identified by the

22   government.

23           AUSA Weinberg, does the government have any further

24   updates on restitution?

25           MR. WEINBERG:  No, your Honor.

NbsWrayS

1         Just before sentencing, the government was given a few

2    additional victims that the defendant is saying are

3    misstatements, and the government wants to go back -- not

4    misstatements, excuse me, that the figure is incorrect, is

5    misstated.  The government will follow up on that, but I think

6    it would make sense for the parties to confer after sentencing,

7    and either the Court could set a date now or we could propose a

8    date for the Court to finalize restitution.

9         THE COURT:  All right.  By December 19 of this year,

10   the government shall file a proposed consent order of

11   restitution.

12        MR. WEINBERG:  May I just be heard on one other point?

13        THE COURT:  Yes.

14        MR. WEINBERG:  And my apologies for not raising this

15   earlier, but technically Count One, which also involved the

16   violation of 18 U.S.C. 3147 for the crime while on pretrial

17   release, any sentence imposed on Count One, there needs to be a

18   consecutive sentence on 18 U.S.C. 3147, for that portion of it.

19   However, there's no mandatory minimum.  The Court could issue a

20   sentence exactly as the Court did and then say that the

21   sentence for 18 U.S.C. 3147 is time served.

22        THE COURT:  All right.  So I will adjust my sentence

23   such that the sentence for 3147 is time served.

24        MR. WEINBERG:  Thank you.

25        THE COURT:  As I was saying, December 19 is the

1    deadline for the government to file a proposed consent order of

2    restitution, and upon the Court's entry of the order, the order

3    of restitution shall become part of the judgment in the case.

4        Finally, I am required to remind you, Mr. Ray, that

5    pursuant to the consent order of forfeiture/money judgment, you

6    have consented to the entry of a money judgment in the amount

7    of $42,128,912 in United States currency, representing proceeds

8    traceable to the commission of said offenses.

9        Further, as a result of committing Count One and Three

10   of the superseding information, you must forfeit to the United

11   States government, pursuant to 18 U.S.C. Section 981(a)(1)(C)

12   and 28 U.S.C. Section 2461(c), all property, real and personal,

13   involved in the offenses or traceable to such property.

14       That includes all rights, title and interests in the

15   following specific property:

16       Approximately $8,014,542.84 in funds formerly on

17   deposit in J.P. Morgan Chase account 587327039, held in the

18   name of CSA Business Solutions LLC;

19       Approximately $29,928.26 in funds formerly on deposit

20   in Comerica Bank account 1853227906, held in the name of

21   trucking company 1;

22       Approximately $20,298.38 in funds formerly on deposit

23   in J.P. Morgan Chase account 707327828, held in the name of

24   trucking company 1.

25       Approximately $13,088.90 in funds formerly on deposit

NbsWrayS

```
 1   in DFCU Financial checking account 209383348, held in the name

 2   of Franklin G. Ray;

 3              Any and all funds on deposit in PNC Bank account

 4   41-6216-2537, up to and including $39,596.23, held in the name

 5   of Marsha G. Ray and Franklin Ray, and all funds traceable

 6   thereto, including accrued interest;

 7              Approximately $84,555.05 in funds formerly on deposit

 8   in Fifth Third Bank account 7981225365, held in the name of CSA

 9   Business solutions LLC; and

10              Approximately $105,838.73 in funds formerly on deposit

11   in J.P. Morgan Chase account 659155698, held in the name of CSA

12   Aviation Inc.

13              Pursuant to the second forfeiture order, the following

14   additional property must also be forfeited to the United States

15   government as constituting proceeds traceable to the commission

16   of the four offenses described in Counts One through Four of

17   the information.  This includes all rights, title and interest

18   in the following specific property:

19              $71,650 in United States currency seized on or about

20   March 2, 2022, from defendant's residence on Poppleton Road,

21   Canton, Michigan;

22              A 2016 Kenworth construction tractor, VIN

23   1XKYDP9X6GJ109362;

24              A 2016 Kenworth T680 tractor, VIN 1XKYDP9X6GJ109314;

25              A 2016 Kenworth tractor, VIN 1XKYDP9X4GJ10358;
```

NbsWrayS

1          A 2016 Kenworth T680 tractor, VIN 1XKYDP9X1GJ109284;

2          A 2021 GMC Yukon, VIN 1GKS2AKD5MR196421; and

3          A 1968 Chevy Camaro purchased on or about August 18,

4   2021, with Michigan license plate FLAVTWN, VIN 124678N412611.

5          Additionally, as a result of committing the offenses

6   charged in Count Two and Count Four of the superseding

7   information, you shall forfeit to the United States, pursuant

8   to 18 U.S.C. Section 982(a)(2)(A), all property, real and

9   personal, involved in the offense or traceable to such

10  property.

11         The mandatory and standard conditions of supervised

12  release on pages 53 and 54 of the presentence report shall

13  apply.

14         In addition, the following special conditions from the

15  presentence report shall apply.  These special conditions

16  include that:

17         You must provide the probation officer with access to

18  any requested financial information.

19         You must not incur new credit charges or open

20  additional lines of credit without the approval of the

21  probation officer unless you are in compliance with the

22  installment payment schedule.

23         You shall submit your person, and any property,

24  residence, vehicle, papers, computer, other electronic

25  communication, data storage devices, cloud storage or media,

1    and effects to a search by any United States probation officer

2    and, if needed, with the assistance of any law enforcement.

3    The search is to be conducted when there is reasonable

4    suspicion concerning violation of a condition of supervision of

5    unlawful conduct by the person being supervised.  Failure to

6    submit to a search may be grounds for revocation of release.

7    You shall warn other occupants that the premises may be subject

8    to searches pursuant to this condition.  Any search shall be

9    conducted at a reasonable time and in a reasonable manner.

10          If the probation officer determines, based on your

11   criminal record, personal history or characteristics, that you

12   pose a risk to another person, including an organization, the

13   probation officer, with the prior approval of the Court, may

14   require you to notify the person about the risk and you must

15   comply with that instruction.  The probation officer may

16   contact the person and confirm that you have notified the

17   person about the risk.

18          I recommend that you are supervised in the district of

19   your residence.

20          Does either attorney know of any legal reason why the

21   sentence as stated should not be imposed?

22          MR. WEINBERG:  Not from the government, your Honor.

23          MR. STRAZZA:  No, your Honor.

24          THE COURT:  The sentence as stated is imposed.

25          That is the sentence of the Court.

NbsWrayS

1      You have the right to appeal your conviction and

2  sentence.  The notice of appeal must be filed within 14 days of

3  the judgment of conviction.

4      If you are not able to pay the cost of an appeal, you

5  may apply for leave to appeal *in forma pauperis*.  If you

6  request, the clerk of court will prepare and file a notice of

7  appeal on your behalf.

8      I understand that the probation department recommends

9  voluntary surrender.

10      Have the parties agreed to a date of surrender?

11      MR. WEINBERG:  We have not.

12      MR. STRAZZA:  Your Honor, I'm respectfully requesting

13  a date in January.

14      THE COURT:  All right.  January 29 is the date,

15  January 29, 2024.

16      Are there any further applications?

17      MR. WEINBERG:  The government would just move to

18  dismiss any open counts.

19      THE COURT:  Any open counts are dismissed.

20      That brings our sentencing hearing to a close.

21      I want to thank the victim who testified here today.

22  You made a difference in my assessment of the appropriate

23  sentence.

24      The matter is adjourned.

25      (Adjourned)